IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISAAC BROOKS,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON HEALTH – NORTHEAST and THOMAS JEFFERSON UNIVERSITY,<br><br>Defendants. | CIVIL ACTION NO. |

**COMPLAINT**

Plaintiff Isaac Brooks files this Complaint against Defendant Jefferson Health – Northeast and Thomas Jefferson University d/b/a Jefferson Health (Defendants are collectively referred to as "Jefferson Health"), seeking relief from Jefferson Health's violations of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e, *et seq*.), the Pennsylvania Human Relations Act ("PHRA" – 43 P.S. §§ 951 *et seq*.), and Pennsylvania law, and in support states the following:

**THE PARTIES**

1. Plaintiff Isaac Brooks is an adult individual who resides in King of Prussia, Pennsylvania.

2. Defendant Jefferson Health – Northeast is a nonprofit corporation organized under Pennsylvania law with headquarters located at 1101 Market Street, Philadelphia, Pennsylvania 19107.

3. Defendant Thomas Jefferson University is a nonprofit corporation organized under Pennsylvania law with headquarters located at 1101 Market Street, Philadelphia, Pennsylvania 19107. Defendant Thomas Jefferson University does business as both Jefferson

Health and Jefferson Health System and is listed as the sole owner of both of those corporation names through Pennsylvania's Department of State.

4. At all relevant times, Jefferson Health collectively constituted Plaintiff's employers under the joint and/or single employer doctrine. Upon information and belief, Jefferson Health shared common management, had interrelated operations (including human resources functions and workplace policies), and collectively controlled Plaintiff's job duties and responsibilities.

5. At all relevant times, Jefferson Health acted by and through its authorized agents, servants, workmen, and/or employees, who were acting within the course and scope of their employment with Jefferson Health and in furtherance of Jefferson Health's business.

6. At all relevant times, each Defendant continuously employed more than 15 employees and was a covered employer as defined by Title VII and the PHRA.

7. At all relevant times, Brooks constituted an employee of Jefferson Health as defined by Title VII and the PHRA.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the claims of Brooks arise under the laws of the United States and Brooks is seeking redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Brooks' federal claims that they form part of the same case or controversy.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to Brooks' claims occurred at Jefferson Health's facilities located in Philadelphia, Pennsylvania.

## FACTUAL BACKGROUND

A. Brooks, the Exemplary Employee

10. On April 8, 2021, Brooks began his employment with Jefferson Health as Housekeeper at the Torresdale Hospital located at 10800 Knights Road, Philadelphia, Pennsylvania.

11. For nearly twenty months, Brooks performed the essential duties of his job and he performed them well. As a result, Brooks was promoted and began working as Patient Safety Associate for Jefferson Health.

12. While Brooks' role as Patient Safety Associate kept him at Torresdale Hospital, he began working with and around a new group of employees who repeatedly harassed, demeaned, and subjected him to threats and violence ("Coworker Bigots").

13. As Housekeeper, Brooks' reputation in the hospital was defined by his stellar work performance.

14. As Patient Safety Associate, Brooks' life was defined by Coworker Bigots' repeated attempts to define him by his sexual orientation, exaggerated rumors, and his perceived disabilities. When Brooks pushed back, the harassment grew increasingly worse.

15. While Brooks reported these issues involving Coworker Bigots, Jefferson Health did nothing more than perfunctory reviews of the discriminatory, harassing, and bigoted behavior that Brooks was subjected to for nearly a three-year period.

B. Discriminatory, Harassing, and Bigoted Behavior Brooks Endured

16. Brooks is a gay man who does not conform with society's expectations on how a man should present or what a man should wear in public. For instance, Brooks might wear makeup, nail polish, and/or feminine accessories, and he does so whenever he feels like it.

17. At no point has Brooks' choice of clothing, makeup, or accessories ever impacted his ability to perform the essential functions of his job with Jefferson Health, whether in the Housekeeper or Patient Safety Associate position.

18. For presumably hateful reasons, Coworker Bigots could never accept Brooks and presumed the worst things about him.

19. For years, Brooks was subjected to discriminatory and harassing conduct from Coworker Bigots, which included

a. Statement from a supervisory-level employee ("K.D.") who told Brooks, "that is why your mom is dead, you got all that faggot with you, with all the makeup on your face";

b. K.D. also attempted to humiliate Brooks in front of others by loudly proclaiming, with no context, "why are your nails painted";

c. A security guard employee (N.B.) repeatedly called Brooks "faggot", "coke whore", "crybaby, bitch boy", "bitch", "sissy", and "ripper" in front of coworkers and patients;

d. N.B. also asked Brooks such things like, "do you cry when you take a hammer in your rectum?"; and

e. N.B. also stated in front of Brooks' coworkers to "not be a faggot like Lady Isaac" and encouraged other employees to join in on his harassment of Brooks.

20. Brooks attempted to formally address these issues by reporting N.B. to his immediate supervisor in August 2024.

21. Upon information and belief, N.B.'s supervisor took no action to investigate Brooks' report or to address Brooks' complaint about N.B.

22. On August 28, 2024, Brooks attended a meeting with a representative from Jefferson Health's Human Resources Department. This meeting was supposed to include N.B. However, N.B. never showed.

23. Upon information and belief, Jefferson Health took no action to address N.B.'s harassing and discriminatory behavior of Brooks.

24. On September 3, 2024, N.B. attempted to run Brooks over while driving a golf cart in a Jefferson Health parking lot. Brooks reported this incident involving N.B. to the police and to Jefferson Health. Unfortunately, neither of these reports deterred N.B. from continuing to harass Brooks at work. In fact, N.B. escalated his harassment by telling Jefferson Health employees that Brooks was HIV-positive.

C. Brooks' Reporting of the Discrimination, Harassment, and Bigotry He Endured

25. Throughout 2024 and through July 2025, Brooks made repeated reports about the discrimination, harassment, and bigotry he endured from Coworker Bigots to Jefferson Health, which included reports to Nurse Manager Bridget Ostaszewski, Assistant Nurse Manager Sharon Clark, and Senior HR Business Partner Cristin Nicoletti.

26. Sometimes, Brooks' reports were formal reports about the discriminatory and harassing behavior he was dealing with. Other times, Brooks would simply plead for any kind of meaningful help.

27. When Jefferson Health failed to take any meaningful steps to address the discrimination, harassment, and bigotry Brooks was subjected to from Coworker Bigots, Brooks dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on or about October 25, 2024.

28. Unfortunately, things did not improve. Brooks continued to be harassed and discriminated against, which included a whisper campaign by Coworker Bigots to spread that

Brooks was HIV-positive. When Brooks reported these HIV rumors to Jefferson Health, they did nothing more than a superficial review of his claims.

29. Eventually, this hostile work environment took a severe toll on Brooks as he suffered from severe depression, anxiety, and suicidal ideations.

30. In July 2025, Brooks applied for FMLA-protected leave. In support of his application for FMLA-protected leave, Brooks' treating physician stated that he was a disabled individual who was dealing with "severe depression and anxiety resulting from a toxic workplace situation."

31. On July 21, 2025, Brooks began his FMLA-protected leave. Brooks remained off from work, due to his severe depression and anxiety, through September 25, 2025.

D. Retaliatory Conduct Towards Brooks

32. One day after Brooks began his FMLA-protected leave, he began to hear rumors about his HIV-positive status from Jefferson Health employees. In addition, he also heard that other Jefferson Health employees knew about his FMLA-protected leave and the underlying medical reasons for his FMLA-protected leave.

33. Brooks reported his concerns to Jefferson Health that (a) Jefferson Health employees had uncovered and disseminated his protected health information and (b) Jefferson Health employees had spread information about his HIV-positive status to coworkers and individuals who worked outside of Jefferson Health.

34. Brooks returned to work on September 25, 2025. One day later, Brooks was called into a meeting with Jefferson Health and was placed on suspension, pending investigation, for stealing time.

35. On October 1, 2025, Jefferson Health terminated Brooks' employment for allegations of stealing time. The stated reasons for Brooks' firing were pretext.

36. Jefferson Health failed to apply its workplace policies in a uniform and fair manner and retaliated against Brooks when it investigated and audited Brooks' timecard records (when no other employee was subjected to such an audit); suspended Brooks for stealing time; and terminated Brooks' employment even though he provided a valid explanation for the alleged irregularities with his time entries.

37. Jefferson Health's decision to terminate Brooks' employment came soon after he reported that Coworker Bigots were continuing to harass and discriminate against him by disseminating his HIV-positive status to Jefferson Health employees and members of the public.

38. Upon information and belief, Jefferson Health was aware that some of its employees had obtained and disseminated Brooks' protected health information and used that information to harass and discriminate against him.

39. Upon information and belief, Jefferson Health never addressed, trained, or otherwise took steps to ensure that Jefferson Health employees would stop sharing Brooks' protected health information.

40. Upon information and belief, Jefferson Health perceived that Brooks was a troublemaker employee for his repeated reports of discrimination and harassment in the workplace. As a result, Jefferson Health believed that it would be better for the workplace if Brooks was removed.

41. It is believed that Jefferson Health acted willfully and in reckless disregard of Brooks' rights under Title VII and the PHRA when it fired him.

42. Brooks dual-filed two Charges of Discrimination against Jefferson Health with the EEOC and PHRC, alleging violations of Title VII and the PHRA.

43. By letters dated August 5, 2026, the EEOC notified Brooks of his right to file a civil action against Jefferson Health based on the two Charges of Discrimination he dual-filed against Jefferson Health.

44. Brooks has initiated this civil action within 90 days of receiving the EEOC's Right to Sue letters.

45. In accordance with 43 P.S. § 962(c)(2) of the Pennsylvania Human Relations Act, Brooks is contemporaneously serving a copy of this Complaint on the PHRC.

46. As such, Brooks has exhausted his administrative remedies under federal and state law.

## STATEMENT OF CLAIMS

### COUNT I
Violations of Title VII
(Plaintiff v. Defendants)

47. Brooks incorporates by reference the allegations in Paragraphs 1 through 46, as if fully set forth herein.

48. The acts and omissions by Jefferson Health that are described in this Complaint constitute retaliation under Title VII, which includes Jefferson Health's decision to audit, suspend, and eventually fire Brooks over allegations of stealing time, soon after he reported additional issues of discrimination and harassment in the workplace.

49. As a proximate result of Jefferson Health's conduct, Brooks has or will suffer substantial harm, for which Brooks seeks general, compensatory, consequential, and punitive damages.

**COUNT II**
Violations of the PHRA
(Plaintiff v. Defendants)

50. Brooks incorporates by reference the allegations in Paragraphs 1 through 49, as if fully set forth herein.

51. The acts and omissions by Jefferson Health that are described in this Complaint constitute retaliation under the PHRA, which includes Jefferson Health's decision to audit, suspend, and eventually fire Brooks over allegations of stealing time, soon after he reported additional issues of discrimination and harassment in the workplace.

52. As a proximate result of Jefferson Health's conduct, Brooks has or will suffer substantial harm, for which Brooks seeks general, compensatory, and consequential damages.

**COUNT III**
Negligent Training
(Plaintiff v. Defendants)

53. Brooks incorporates by reference the allegations in Paragraphs 1 through 52, as if fully set forth herein.

54. Brooks was subjected to years of discrimination and harassment in the workplace, which he formally reported to Jefferson Health, on numerous occasions.

55. Brooks also formally reported, on numerous occasions, that Jefferson Health employees had obtained and disseminated Brooks' protected health information (e.g., HIV-positive status) and yet it did not take any measures to prevent such misconduct from recurring in the workplace.

56. Jefferson Health owed a duty to Brooks to keep confidential his protected health information. In addition, federal and state laws impose a duty on Jefferson Health to maintain the confidentiality of its employees' protected health information.

57. Upon information and belief, Jefferson Health was aware of multiple instances in which Jefferson Health employees had obtained and disseminated Brooks' protected health information and used that information to harass and discriminate against him. Jefferson Health's subsequent failure to take reasonable action (e.g., training or retraining employees) resulted in Brooks being subjected to discriminatory and harassing behavior based on his protected health information. This constituted a breach of Jefferson Health's duties to Brooks.

58. To this day, Jefferson Health employees continue to spread information about Brooks' protected health information to other employees and members of the public.

59. Jefferson Health was grossly negligent because its behavior entailed a conscious disregard and indifference to Brooks' safety and rights. Jefferson Health engaged in intentional misconduct because it had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Brooks would result. Despite that knowledge, Defendant intentionally pursued a course of conduct which ignored its duties under federal and state laws, resulting in injuries and damages to Brooks. Consequently, Brooks is entitled to and seeks punitive damages.

60. As a proximate result of Jefferson Health's breach of its duties regarding its failure to train, Brooks has or will suffer substantial harm, for which Brooks seeks general, compensatory, consequential, and punitive damages.

## REQUESTS FOR RELIEF

Accordingly, Brooks requests that this Court enter judgment on his behalf and enter an order directing the award of other relief, as follows:

A. Finding that Jefferson Health violated Title VII;

B. Finding that Jefferson Health violated PHRA;

C. Finding that Jefferson Health engaged in tortious conduct which violated Pennsylvania law concerning the negligent training of its employees;

D. Awarding Brooks back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make him whole;

E. Awarding Brooks compensatory damages for pain, humiliation, emotional distress, and damage to reputation;

F. Awarding Brooks punitive damages under Title VII;

G. Awarding Brooks attorneys' fees and costs;

H. Awarding Brooks pre- and post-judgment interest as provided by law; and

I. Awarding Brooks any other relief to which he is entitled and/or which this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

Respectfully submitted,

/s/ Sammy Sugiura

Sammy Y. Sugiura
PA ID No. 209942
Greenberg Gross LLP
1650 Market Street, Suite 3600,
Philadelphia, PA 19103
SSugiura@GGTrialLaw.com

**Counsel for Plaintiff**